**FILED**

JAN 19 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MARK AUSSIEKER,

Plaintiff,

v.

ERC USA Advisors, LINDSAY
HUGHES, SCOTT WEINBRAND
Defendant(s)

:

No. 2: 24-CV-00270-TLN-JDP (PS)

**COMPLAINT FOR DAMAGES**
Trial by Jury not requested

1.      Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to enforce the consumer protection provision in the California Tax Preparer act. PLAINTIFF was solicited to obtain an ERC tax credit. The ERC tax credit or "ERTC" gives eligible employers a tax credit for employing people through the pandemic. Fraud in the ERTC program has become so prevalent that it earned a place on the IRS's annual "Dirty Dozen" list of schemes and scams that make taxpayers vulnerable to personal and financial risk.

2.      In Loving v. IRS[1] "Section 330 cannot be stretched so broadly as to encompass authority to regulate tax-return preparers". California has the Tax Return Preparer act which is to safeguard the public from unscrupulous practices. As the public is now learning, a businesses is on the hook for financial penalties if an IRS audit determines their claim was fraudulent. Thousands of claims have been referred for audits, and federal officials have

---
[1] Loving v. IRS, 742 F. 3d 1013 - Court of Appeals, Dist. of Columbia Circuit 2014, pg 1015

1

opened more than 250 criminal investigations involving $2.8 billion in possibly fraudulent claims[2].

3.      AUSSIEKER brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227,  a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

4.      The Defendants have placed telemarketing calls to a telephone number Mr. Aussieker owned without consent.  Its not possible to "police" the estimated 60 billion robocalls made every year.  The FCC Has Fined Robocallers $208 Million and It's Collected $6,7903.

5.      This Complaint also relates to the Defendants making telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as making such calls to individuals who previously indicated that they did not want to receive telemarketing calls when they registered their number on the national do not call registry.

## PARTIES

6.      Plaintiff Mark Aussieker is an individual and resident of the state of California, and this District.

7.      Defendant SCOTT WEINBRAND "WEINBRAND"  is an individual and is a "person" as defined by 47 US.C. § 153 (39).

8.      Defendant  LINDSAY HUGHES "LINDSAY"  is an individual and is a "person" as defined by 47 US.C. § 153 (39).

9.      Defendant ERC USA Advisors " ERC USA" is an unincorporated business

---

[2] https://www.axios.com/local/tampa-bay/2023/09/26/employee-retention-credit-tampa-florida-scam-irs
[3] https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803

1    association. "ERC USA" is a "person" as defined by 47 US.C. § 153 (39).

2

3                                  Jurisdiction & Venue

4
      10.      The Court has federal question subject matter jurisdiction over these TCPA
5
      claims.  Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740 (2012).
6

7     11.      Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a

8     resident of this district, which is where he received the illegal telemarketing calls that are the

9     subject of this lawsuit.

10
      12.      Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a
11
      resident of this district, which is where he was solicited to purchase the tax preparer services
12

13    13.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

14    substantial part of the events or omissions giving rise to the claims occurred within this

15    District.

16    14.      This Court has personal jurisdiction over the parties because Defendants called

17    into the forum state by targeting a phone number in that forum and targeted the plaintiff.

18
      Likewise, Plaintiff's rights were violated in the State of California and his claims arose out of
19
      his contact with Defendants.
20

21    15.      Plaintiff believes that DEFENDANTS had actual notice that he was a California

22    resident because his phone number corresponds to a California area code.

23    16.      Plaintiff was called and pitched tax preparer services.

24
      17.      The defendant's forum related activities are unsolicited telemarketing calls to a
25
      California resident which played a pre-recorded message,  the natural invasion of privacy
26
      harm of those calls would not have happened but for the calls to California.
27

28    18.      The defendant's forum related activities are tax preparer services directed to a

3

California resident, the illegal manner in which those services were offered would not have happened but for the calls to California.

TCPA Background

19.     TCPA Background In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

20.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(l)(B).

21.     The TCPA and implementing regulations require that calls with a pre-recorded message state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. 47 C.F.R. § 64.1200(b)(1)

22.     The TCPA provides a private cause of action to persons who receive calls in violation of§ 227(b). 47 U.S.C. § 227(b)(3).

23.     The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. Id.

4

24.      In Sengenberger v. Credit Control Services, Inc[4]., the court held that "intentionally" making phone calls that violated the TCPA was sufficient to warrant treble damages because "although neither the TCPA nor the FCC regulations define the terms 'willfully or knowingly'...courts have generally interpreted willfulness to imply only that an action was intentional. Further, Sengenberger noted that while the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation."

25.      A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., Jack on Five Star Catering, Inc. . Season, Case No. 10- 10010, 2013 US. Disk LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) [M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute. (internal quotation marks omitted)); Maryland v. Universal Elections, 787 F. Supp. 2d 408, 415 - 16 (D. Md. 2011) ( If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

Factual Allegations

26.      Plaintiff MARK AUSSIEKER's phone number ending in 9144 is a voice over IP phone.

27.      Plaintiff MARK AUSSIEKER's pays a flat monthly fee for his service.

28.      The Commission has long recognized, and the record in this proceeding supports the same conclusion, that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Wireless subscribers who purchase a large `bucket'

---

[4] SENGENBERGER v. CREDIT CONTROL SERVICES, INC. (N.D.Ill. 5-5-2010)

of minutes at a fixed rate nevertheless are charged for those minutes, and for any minutes that exceed the `bucket' allowance."). The court does not disagree that a call charge on the "front end" might qualify for purposes of the charged call provision under the TCPA. Nevertheless, the called party must be charged for the call for there to be a violation of § 227(b)(1)(A)(iii) where the calls are made to a number not assigned to certain enumerated services, ie., a paging service, cellular telephone service, specialized mobile radio service or other radio common carrier service. Klein v. Commerce Energy, Inc., 256 F. Supp. 3d 563 - Dist. Court, WD Pennsylvania 2017

29.     PLAINTIFF pays a monthly charge of $24.55 for unlimited service compared to some VOIP providers charge 1.7 cents per minute[5].

30.     Plaintiff received five phone calls that played a pre-recorded message. The same message played from previous calls.

31.     The website nomorobo recorded the greeting and the same message from the same caller id that I received A copy of the recording can be found at https://www.nomorobo.com/lookup/707-892-4924. Plaintiff attaches copies of the website for both of the relevant calls at EXHIBIT C

32.     The calls violated 47 U.S.C. § 227(b)(1)(A)(iii) because the calls featured a pre-recorded voice and the calls were made to a number where the plaintiff is charged for the call.

33.     Plaintiff compiled a list of the calls placed to his cell and attaches them as Exhibit A. ALL Calls are in 2023

34.     One call was on 1/24 from 707-892-4924 which had a pre-recorded message.

---

[5] Perrong v. Victory Phones LLC CIVIL ACTION No. 20-5317 2021 U.S. Dist. LEXIS 132404 (E.D. Pa. July 15, 2021)

The same message played from previous calls. NOMO robo also reported the same pre recorded message being played. After the message played, PLAINTIFF was connected to a representative who said she was in the ERC department and confirmed that PLAINTIFF wanted to get an ERC tax refund and would transfer PLAINTIFF to an "IRS advisor". The representative asks basic qualifying questions like if they have already received the credit, how many employees and if there was a hardship. PLAINTIFF feigned interest and said she would transfer to call to one of her agents who were registered with the IRS.

35.     After she transferred the call, a person named SCOTT WEINBRAND came onto the line. Mr. WEINBRAND said he charged 1.5% upfront at the time the amended returns were filed with the IRS. Upon approval from the IRS, his firm would take %15. Mr. WEINBRAND justified his fee in writing. The process that the company followed is attached as EXHIBIT B.

36.     Mr. WEINBRAND inquired with the plaintiff how many employees and payroll.

37.     Mr. WEINBRAND encouraged PLAINTIFF to visit his website to learn more about the company and to upload his documents.

38.     www.ercusa.biz gave a fake address in New York and an email address to support@ercusa.com. The website also gave an address of 50 Biscayne Blvd, Miami FL 33132. PLAINTIFF complained to the owner of ercusa.com. CAMRON SAVAGE, the member manager for CODERON LLC d/b/a/ ERC USA denied that ercusa.com was connected to ercusa.biz He said that someone copied his website and that a MR. WEINBRAND never worked for him.

7

🔍 All   📍 Maps   🛍 Shopping   🖼 Images   ▶ Videos   ⋮ More                    Tools

About 2 results (0.20 seconds)

ercusa.biz
https://ercusa.biz › contact   ⋮

**ERC JSA**

## Contact – ERCUSA

Send. E-Mail. hello@ercusa.com. Location. 1 S. Clinton Avenue Rochester, NY
14607. Office Number. +1 ~877-463-6654~. Varlik 3@10x. Refunds · Who We Are?

39.    www.ercusa.biz copied a website of Innovation Refunds, including the reviews which identified Innovation Refunds as the service provider. PLAINTIFF contacted Innovation Refunds who confirmed that www.ercusa.biz copied their website.

40.    Innovation Refunds sent a takedown request and requested subpoenas to identify the owners of the website for the infringing content found on ercusa.biz[6].

41.    One such claim made on the website was that ERC USA had helped their clients get over 5 Bilion in refunds.

42.    Defendant ERC USA instructs the call opener , hereinafter OPENER and subsequent caller to not reveal the true name of identity of ERC USA.

43.    Defendant ERC USA willfully accepts leads from OPENER that are generated through illegal telemarketing because these leads benefit Defendant ERC USA  financially.

44.    Defendant ERC USA approves and ratifies OPENER's behavior for violating the TCPA because it benefits Defendant ERC USA  financially.

45.    Defendant ERC USA approves of the contracts with OPENER .

46.    Defendant ERC USA authorizes the payments to OPENER .

47.    Defendants ERC USA pays OPENER out of bank accounts that he controls.

48.    Defendant ERC USA are well aware that the unauthorized phone calls being

_____

[6] Innovation Refunds LLC v. GoDaddy.com, LLC (1:23-mi-00034) District Court, N.D. Georgia ecf #1 Exhbit C is affidavit from General Counsel of Innovation attesting to the infringing material. Exhibit D is takedown request

made on their behalf by OPENER soliciting Defendant ERC USA because there is an inference that using a fake name shows awareness of illicit activity.

49.     Defendant ERC USA ratifies OPENER 's illegal telemarketing behavior because it benefits Defendant ERC USA financially. OPENER made at least five harassing calls to Plaintiff calling on behalf of Defendant ERC USA before Plaintiff was able to identify the company OPENER was calling on behalf of.

50.     Plaintiff has never had an established business relationship with Defendant ERC USA· and never knew who Defendant ERC USA was prior to the calls.

51.     Upon information and belief Plaintiff has received additional calls within the past year from OPENER calling on behalf of Defendant ERC USA soliciting tax refund services that are unknown to Plaintiff at this time but will be revealed during discovery.

52.     Plaintiff answered and was connected to a male telemarketer with a thick overseas accent.

53.     The OPENER does not actually process a tax refund but will transfer the call to ERC USA to have them perform those services.

54.     There is a coordinated marketing campaign between ERC USA and OPENER that allows OPENER to solicit the customers for ERC USA and qualify customers for ERC USA. ERC USA instructs OPENER to not reveal ERC USA's true identity.

55.     ERC USA gets copies of the recording in the event the call that is transferred does not meet standards that ERC USA sets.

56.     DEFENDANT ERC USA tasks OPENER with informing PLAINTIFF that the call will be transferred to an agent that is registered with the IRS instead of truthfully telling them the identity the party who receives the transfer.

57.    DEFENDANT ERC USA controls OPENER by not accepting leads that do not conform with the standards set out above.

58.    PLAINTIFF believes these statements would qualify as "tax preparer services" pursuant to Cal. Bus. & Prof. Code § 22251 a1(a) "A person who, for a fee or for other consideration, assists with or prepares tax returns for another person or who assumes final responsibility for completed work on a return on which preliminary work has been done by another person, or who holds himself or herself out as offering those services A person engaged in that activity shall be deemed to be a separate person for the purposes of this chapter, irrespective of affiliation with, or employment by, another tax preparer.

59.    WEINBRAND, HUGHES and ERC USA are each a separate person under the statute, so each violation is a violation of that person.

60.    Defendants WEINBRAND, HUGHES and ERC USA performed tax preparer services for a fee because WEINBRAND emailed on 1/24/2023 and claimed "On average, we are getting customers 15-22% more than other companies while charging a lower success fee. It truly is a win-win". HUGHES also made the same claim on her email on 3/9/23. The fact that same language is used in both emails, it appears that ERC USA directed and controlled HUGHES and WEINBRAND to make such statements, thus ERC USA does the same.

61.    Defendants WEINBRAND, HUGHES and ERC USA assists with or prepares tax returns for another person or who assumes final responsibility for completed work on a return on which preliminary work has been done by another person, or who holds himself or herself out as offering those services  because WEINBRAND told PLAINTIFF that he would upload his tax returns and documents through their website. Once that happened, the returns would be analyzed, and the accounting team would prepare and file the tax returns.  HUGHES

10

requested that PLAINTIFF submit his returns to the back office and explained over the phone

the back office will calculate the refund and also prepare and file the amended tax returns.

These statements are also reflected in her email on 3/9/23

62.     ERC USA provided advice, by offering to act or acting as an intermediary,

including, but not limited to, determining eligibility based on number of employees, assisting

in calculating the refund, hosting videos that explain how to claim the refund, answering

questions about the program, charging a fee only if the refund was successful, assisting with

the preparation of returns and submission of the returns.  The

63.     DEFENDANTS determine eligibility based on number of employees because

WEINBRAND and HUGHES ask how many employees PLAINTIFF had and if he had any

relatives.  PLAINTIFF believes that relatives count different towards eligibility and there

needs to be a minimum number of employees who are not related to or own the company.

WEINBRAND and HUGHES both asked PLAINTIFF how many employees he had thus they

are determining eligibility if in fact a certain number of employees is needed in order to

qualify for the ERTC.

64.     WEINBRAND and HUGHES held themselves out as offering the services

because they said that " We will have your refund calculation and docs ready by the next

scheduled call" .

65.     ERC USA hosted videos that explains what the ERTC credit is on their website

and through emails.

66.     WEINBRAND and HUGHES held themselves out as offering the services

because they were answering questions about the program and boasting how their firm was

able to achieve better results compared to other firms.  Specifically, "we are getting customers

15-22% more than other companies while charging a lower success fee".  The same language

is used in both emails, it appears that ERC USA directed and controlled HUGHES and WEINBRAND to make such statements, thus ERC USA does the same.

67.     WEINBRAND and HUGHES only charged a fee if they were successful, thus indicating that there was a high degree of confidence in the leads being given.

68.     WEINBRAND and HUGHES assist with the preparation of returns and submission of the returns by encouraging them to be uploaded onto their website and by hiring programmers to allow the submission of those returns.

69.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

70.     During all relevant times, Defendant did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing  pursuant to 47 U.S.C. § 227(b)(1)(A).  The calls are impersonal advertisements: they do not address Plaintiff personally and they are only meant to generate calls to Defendant business.

71.     Plaintiff declares that he has never heard of Defendant  ERC USA or, visited any location operated by either Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendants or consented to receive calls from Defendant. Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendants, nor had he previously purchased any kind of product or service

72.     Mr. Aussieker's concrete injury as it relates to the Spokeo decision is loss of productivity for answering the call, , defendants bothering him with unrequested solicitations,hearing that he missed out on a tax credit.

73.     Mr. Aussieker did not welcome these calls.

74.     Defendant's calls harmed the Plaintiff by causing the very harm that Congress

sought to prevent- a nuisance and invasion of privacy.

75.      Defendant's solicitation of tax services have harmed the Plaintiff by causing the him to think that he was missing out on a tax credit.

## FORMAL AGENCY

76.      Actual authority is limited to actions "specifically mentioned to be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." Salyers, 871 F.3d at 940  (quoting NLRB v. Dist. Council of Iron Workers of the State of Cal. and Vicinity, 124 F.3d 1094, 1098 (9th Cir. 1997)).  In the training video,

77.      It appears that ERC USA gave absolute control for the generating of sales to OPENER.  This is sufficient to show an agency relationship because ERC USA set out specific criteria of who was to be contacted and what OPENER must deliver.  ERC USA set a sales process where OPENER would do the heavy lifting and locating of potential customers that allowed ERC USA to spend their time working with qualified leads at PLAINTIFF's expense.

78.      Implied actual authority comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction. Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co., 414 F.2d 750, 755 (9th Cir. 1969)

79.      Apparent authority arises from the principal's manifestations to a third

13

party that supplies a reasonable basis for that party to believe that the principal has

authorized the alleged agent to do the act in question. NLRB v. Donkin's Inn, 532 F.2d

138, 141 (9th Cir. 1976), cert. denied, 429 U.S. 895 (1976). If the District Council

(principal) supplied a reasonable basis for Coker (third party) to believe that it had

authorized Sorensen (agent) to modify the Standard Agreement, no ratification would

be required. Nat'l Labor Relations Bd. v. District Council of Iron Workers of

California & Vicinity, 124 F.3d 1094, 1099 (9th Cir. 1997)  In PLAINTIFFS view,

OPENER gave PLAINTIFF a reasonable basis to believe that OPENER who

contacted PLAINTIFF  was authorized to operate on behalf ERC USA because

OPENER explained the program and informed him he was qualified for the ERTC

80.     PLAINTIFF was transferred directly to the MR. WEINBRAND after he

expressed interest in tax refund services from the OPENER which created "a

reasonable inference that the telemarketers were authorized by  DEFENDANTS to

find clients for them.

81.     PLAINTIFF is aware that marketers will  put language in a contract that

prohibits the vendor from violating state or federal law.  ("Any claim that [Defendant] had

actual authority to place the calls is precluded by the express language in [Defendant's]

contract . . . expressly prohibiting telemarketing methods that would violate state or

federal law, including laws governing robocalls.") See Jones v. Royal Admin. Svcs., Inc.,

887 F.3d 443, 446 (9th Cir. 2018).

82.     . If there is an argument that ERC USA is not responsible for the calls due to

a contractual relationship- PLAINTIFF will ask the court to evaluate whether or not the

underlying agreement is enforceable when the object of the contract requires that

OPENER solicit people which may violate state law.

83.     Restatement of Agency 2d put foreseeable acts within the scope of employment. Putting compliance to the TCPA within the contract clearly shows that TCPA violations were foreseen

## Agency Liability

84.     In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Red. 1830, 1844 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 FCC Red. 12391, 123971 13 (1995).

85.     It appears that ERC USA  has  "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task because ERC US controls the hours in which calls are made and the questions that the call opener makes.

## PERSONAL LIABILITY

86.     The TCPA is part of the Communications Act. Under the TCPA, an individual may be personally liable under 47 U.S.C. § 217. This section provides the "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."

87.     The identity and name of the member manager or the person in charge of ERC USA is unknown. The person in charge of the ERC USA is involved in day to day

operations and would have the power to set the criteria for which leads ERC USA would

accept and he or she chose to accept calls there were generate by Pre recorded messags.

As such, the person in charge is liable if the person can be identified.  It is also possible

that ERC USA offers some sort of franchise model where each agent operates as an

independent contractor.

## COUNT 1

### Violation of the California Tax Preparation Act CA Civil Code

### §22250 et seq

88.        PLAINTIFF charges Count ONE against ERC USA

89.        Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing

paragraphs.

90.        Defendant ERC USA performed preparation services under Cal. Bus. & Prof.

Code § 22251 a1(a)  because for compensation they assisted or held themselves out as being

able to assist in the amendment of tax returns to claim a tax refund under the ERTC. Their

actions as detailed above.

91.        Under the act, Cal. Bus. & Prof. Code § 22253(a) (1) it is a violation to do any of

the following: Fail to register as a tax preparer with the council.  Here, ERC USA is not

registered with CTEC as a tax preparer with the council because their name does not appear in

the CTEC directory.

92.        Under the act, Cal. Bus. & Prof. Code § 22253(a) (2) it is a violation to do any of

the following: (2) Make, or authorize the making of, any statement or representation which is

intended to induce persons to use the tax preparation service of the tax preparer, which

statement or representation is fraudulent, untrue, or misleading.  Here, ERC USA claims that

On average, we are getting customers 15-22% more than other companies while charging a lower success fee. This is either untrue or misleading because the tax credit is formulaic and not based on the skill or judgement of the person amending the tax return. ERC USA copied reviews from other tax preparation companies and passed those reviews off as being reviews from their customers.  ERC USA claimed to have helped recover over 5 billion in credits which is untrue.

93.        Under the act, Cal. Bus. & Prof. Code § 22253(a) (6) it is a violation to do any of the following: (6) Engage in advertising practices which are fraudulent, untrue, or misleading, including, but not limited to, assertions that the bond required by Section 22250.1 in any way implies licensure or endorsement of a tax preparer by the State of California.  Here ERC USA uses a website that is copied from other Innovation Refunds and ercusa.com.  ERC USA copied reviews from other tax preparation companies and passed those reviews off as being reviews from their customers.  ERC USA claimed to have helped recover over 5 billion in credits which is untrue. ERC USA claimed that the legal name of their entity was ERC USA when in fact no such entity was able to be located under that name.


94.        Under the act, Cal. Bus. & Prof. Code § 22253(a) (11) it is a violation to do any of the following: (11) Knowingly give false or misleading information to the consumer pursuant to Section 22252, or give false or misleading information to the surety company pursuant to subdivision (a) of Section 22250.1, or give false or misleading information to the California Tax Education Council pursuant to Section 22255.  Here, ERC USA has given false or misleading information as far as their name and address because the address in Miami is for a condo complex and it is not possible to reach anyone without having a unit number.  Lying by omission, also known as a continuing misrepresentation occurs when an important

fact is left out in order to foster a misconception.  Here the suite number was omitted and thus the address given is useless.

95.        Under the act, Cal. Bus. & Prof. Code §22250.1 (a) a tax preparer is required to obtain a bond.  Here, ERC USA failed to get a bond.

96.        Under the act, Cal. Bus. & Prof. Code § 22253(b) (b) Each violation of this section constitutes a separate offense.

97.        Under the act, Cal. Bus. & Prof. Code §22256 Statutory damages in an amount to be determined by the court of no less than one thousand dollars ($1,000) and no more than five thousand dollars ($5,000) per violation of this title. PLAINTIFF pleads 5 violations of the act.

98.        Accordingly, PLAINTIFFF is entitled to damages and asks for maximum damages of $5,000

## **COUNT 2**

### **Violation of the California Tax Preparation Act CA Civil Code §22250 et seq**

99.        PLAINTIFF charges Count TWO  against SCOTT WEINBRAND

100.        Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

101.        Defendant SCOTT WEINBRAND performed preparation services under Cal. Bus. & Prof. Code § 22251 a1(a)  because for compensation he assisted or held himself out as being able to assist in the amendment of tax returns to claim a tax refund under the ERTC.

His actions are detailed above.  Mr. WEINBRAND referred to himself as an "ERC

ADVISOR" for "ERC USA Advisors"  He made statements like his firm was able to get

larger tax refunds compared to other firms indicating that by utilizing Mr. WEINBRANDS

services, PLAINTIFF would see a higher tax credit.

102.      Under the act, Cal. Bus. & Prof. Code § 22253(a) (1) it is a violation to do any of

the following: Fail to register as a tax preparer with the council.  Here, WEINBRAND is not

registered with CTEC as a tax preparer with the council because his name does not appear in

the CTEC directory.

103.      Under the act, Cal. Bus. & Prof. Code § 22253(a) (2) it is a violation to do any of

the following: (2) Make, or authorize the making of, any statement or representation which is

intended to induce persons to use the tax preparation service of the tax preparer, which

statement or representation is fraudulent, untrue, or misleading.  Here, WEINBRAND claims

that "On average, we are getting customers 15-22% more than other companies while

charging a lower success fee. This is either untrue or misleading because the tax credit is

formulaic and not based on the skill or judgement of the person amending the tax return".

104.      Under the act, Cal. Bus. & Prof. Code § 22253(a) (6) it is a violation to do any of

the following: (6) Engage in advertising practices which are fraudulent, untrue, or misleading,

including, but not limited to, assertions that the bond required by Section 22250.1 in any way

implies licensure or endorsement of a tax preparer by the State of California.  Here

WEINBRAND uses a website and email address for a company that does not appear to exist.

When he was asked about the real name, MR. Weinbrand claims to not know.  Lying by

omission, also known as a continuing misrepresentation, occurs when an important fact is left

out in order to foster a misconception. Lying by omission includes the failure to correct pre-

existing misconceptions.  Initially, Mr. Weinbrand did not respond to inquiries about who he

19

actually worked for. There is a question of fact as to whether or not he should be required to remember who he worked for a year ago.

105.    Under the act, Cal. Bus. & Prof. Code § 22253(a) (11) it is a violation to do any of the following: (11) Knowingly give false or misleading information to the consumer pursuant to Section 22252. Here,  WEINBRAND has given false or misleading information as far as identifying himself as working for "ERC USA Advisors" when in fact he should have known this was false. Mr. WEINBRAND told PLAINTIFF to upload his documents to https://ercusa.biz/erc-submission-form-sw . It is believed that when WEINBRAND was hired or agreed to his compensation package that some sort of offer was made to him for employment which would have identified the company in which he was working for. WEINBRAND knew of should have known that the offer of employment did not match the email address or company name that he supplied to potential customers. WEINBRAND knew of should have known by visiting the website that something was wrong when the website appeared to have testimonials for other companies. A reasonable person would have looked at the company website and been able to determine that the company was not legitimate.

106.    Under the act, Cal. Bus. & Prof. Code §22250.1 (a) a tax preparer is required to obtain a bond. Here, WEINBRAND failed to get a bond.

107.    Under the act, Cal. Bus. & Prof. Code § 22253(b) (b) Each violation of this section constitutes a separate offense.

108.    Under the act, Cal. Bus. & Prof. Code §22256 Statutory damages one thousand dollars ($1,000) per violation of this title. PLAINTIFF pleads 5 violations of the act.

109.    Accordingly, PLAINTIFFF is entitled to damages and asks for maximum damages of $5,000

## COUNT THREE

### Violation of the California Tax Preparation Act CA Civil Code

### §22250 et seq

110.     PLAINTIFF charges Count THREE against HUGHES

111.     Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

112.     Defendant HUGHES performed preparation services under Cal. Bus. & Prof. Code § 22251 a1(a)  because for compensation she assisted or held herself out as being able to assist in the amendment of tax returns to claim a tax refund under the ERTC. Her actions are detailed above.  HUGHES referred to herself as an "ERC ADVISOR" for "ERC USA Advisors"  She made statements like her firm was able to get larger tax refunds compared to other firms indicating that by utilizing HUGHESservices, PLAINTIFF would see a higher tax credit.

113.     Under the act, Cal. Bus. & Prof. Code § 22253(a) (1) it is a violation to do any of the following: Fail to register as a tax preparer with the council.  Here, HUGHES is not registered with CTEC as a tax preparer with the council because her name does not appear in the CTEC directory.

114.     Under the act, Cal. Bus. & Prof. Code § 22253(a) (2) it is a violation to do any of the following: (2) Make, or authorize the making of, any statement or representation which is intended to induce persons to use the tax preparation service of the tax preparer. which statement or representation is fraudulent, untrue, or misleading. Here, HUGHES claims that "On average, we are getting customers 15-22% more than other companies while charging a lower success fee. This is either untrue or misleading because the tax credit is formulaic and not based on the skill or judgement of the person amending the tax return.

115.      Under the act, Cal. Bus. & Prof. Code § 22253(a) (6) it is a violation to do any of the following: (6) Engage in advertising practices which are fraudulent, untrue, or misleading, including, but not limited to, assertions that the bond required by Section 22250.1 in any way implies licensure or endorsement of a tax preparer by the State of California. Here HUGHES uses a website and email address for a company that does not appear to exist. PLAINTIFF complained to her via email and was ignored, thus there was a continuing misrepresentation.

116.      Under the act, Cal. Bus. & Prof. Code § 22253(a) (11) it is a violation to do any of the following: (11) Knowingly give false or misleading information to the consumer pursuant to Section 22252. Here, HUGHES has given false or misleading information as far as identifying herself as working for "ERC USA Advisors" when in fact she should have known this was false. HIGHES told PLAINTIFF to upload his documents to https://ercusa.biz/erc-submission-form-lh.  It is believed that when HUGHES was hired or agreed to her compensation package that some sort of offer was made to her employment which would have identified the company in which he was working for. HUGHES knew of should have known that the offer of employment did not match the email address or company name that she supplied. HUGHES knew of should have known by visiting the website that something was wrong when the website appeared to have testimonials for other companies. A reasonable person would have looked at the company website and been able to determine that the company was not legitimate.

117.      Under the act, Cal. Bus. & Prof. Code §22250.1 (a) a tax preparer is required to obtain a bond. Here, HUGHES failed to get a bond.

118.      Under the act, Cal. Bus. & Prof. Code § 22253(b) (b) Each violation of this section constitutes a separate offense.

119.      Under the act, Cal. Bus. & Prof. Code §22256 Statutory damages one thousand

dollars ($1,000) per violation of this title. PLAINTIFF pleads 5 violations of the act.

120.     Accordingly, PLAINTIFFF is entitled to damages and asks for maximum damages of $5,000

## COUNT 4

### Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(b)(1)(A)(iii) – Auto Dialer

121.   Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

122.   Defendant placed 5 telemarketing calls to the Plaintiff which played a pre-recorded message

123.   PLAINTIFF was charged for the calls.

124.   DEFENANDT failed to produce proof that they had permission to make these calls.

125.   Defendant's own conduct (by placing a Call to Plaintiff's telephone which played a pre-recorded message, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation.

126.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).  Specifically, making so many calls that NOMOROBO caputures and dedicates a weboage to alert people about the calls.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against ERC USA Advisors, LINDSAY HUGHES, SCOTT WEINBRAND  jointly and severally for the following:

127.     Injunctive relief prohibiting such violations of the TCPA by Defendants in the future.

128.     For an order finding for the plaintiff on Count 1-4

129.     For an order finding the defendant ERC USA knowingly and willfully violated the TCPA.

130.     An award against ERC USA of $500 per call for the 5 calls which amounts to $2,500 in statutory damages as prescribed under 47 U.S.C. § § 227(b)(3)(B) This amount be tripled to $7,500 as prescribed under 47 U.S.C. § 227(b)(3)(C)

131.     For an order finding TCPA intentional violations jointly and severally against the corporation and individual for the 5 calls.

132.     An award of $5,000 against ERC USA for COUNT ONE  and the injunctive relief requested against ERC USA

133.     An award of $5,000 against SCOTT WEINBRAND   for COUNT TWO

134.     An award of $5,000 against LINDSAY HUGHES for COUNT THREE

135.     Any other relief the court deems proper.


Respectfully Submitted this 18th January, 2024.


Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise

complies with the requirements of Rule 11.I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 18th Day of  January, 2024.

Signature of Plaintiff

Printed Name of Plaintiff _Mark Aussieker

1

EXHIBIT A

2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24-Jan | | 8:38 AM | "WINDSOR CA" | 17078924924 | 916-290-9144 | | Normal incoming or 0:11:31 outgoing phone call. |
| 18-Jan | | 12:59 PM | "Robo? Name Unav" | 12097031987 | 916-290-9144 | | Normal incoming or outgoing phone call. |
| 18-Jan | | 8:33 AM | "Robo? Name Unav" | 12097031987 | 916-290-9144 | | Normal incoming or outgoing phone call. |
| 17-Jan | | 12:18 PM | "Robo? Name Unav" | 12097031987 | 916-290-9144 | | 0:00:41 Voicemail deposit |
| 17-Jan | | 9:16 AM | "Robo? Name Unav" | 12097031987 | 916-290-9144 | | 0:00:40 Voicemail deposit |

3

4

5

6

7

8

9

2023

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

## EXHIBIT B

# HOW WILL THE PROCESS WORK?

After completing the application  the next steps are..

| 01. | .02 | .03 | .04 |
|---|---|---|---|
| Gathering Documents | Tax Credit Calculation | Return Prep | Get Paid |

After completing our application one of our representatives will contact you to assist in gathering all necessary documents.

Our team will use their expertise to calculate how much credit you can receive from the IRS.

Our Accounting team will then prepare and help file the 941-X Amended payroll returns.

The IRS will process the credit and mail you a check directly.

27

1

2

### EXHIBIT C

3

4

5

6

7

8

9

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28